# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDY GARMO and STEVEN GARMO, former stockholders of AMERICAN JOY, dba M&S LIQUOR<br><br>Plaintiff,<br>vs.<br><br>UNITED STATES OF AMERICA and TOM VILSACK, in his official capacity as Secretary of the United States Department of Agriculture,<br><br>Defendants. | Case No.10-CV-2185-JM-BLM<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Docket Nos. 12, 13 |

Plaintiffs Freddy and Steven Garmo filed a complaint against the United States and Secretary of Agriculture Tom Vilsack (collectively "Defendant" or "the United States") on October 20, 2010 to appeal an administrative assessment of a Transfer of Ownership Civil Money Penalty ("TOCMP") against them based on violations of the Supplemental Nutrition Assistance Program ("SNAP," formerly the Food Stamp Program ("FSP")). On October 14, 2011, the United States filed a motion for summary judgment, and on November 17, Plaintiffs filed a cross-motion for summary judgment. For the reasons stated below, Defendant's motion for summary judgment is GRANTED.

## I. BACKGROUND

Plaintiffs are former owners of M&S Liquor ("M&S"), a store located in Detroit that took part in the federal Food Stamp Program. In January of 2006, M&S received a letter from the Department of Agriculture's Food and Nutrition Service ("FNS") stating it had violated FSP regulations because a "certain series of transactions between May and October 2005 were indicative of 'trafficking.'" Compl. ¶ 6. After Plaintiffs sent a letter denying the charges, M&S was permanently disqualified from the FSP in April 2006.[1] ¶¶ 7-8. Shortly thereafter, Plaintiffs transferred ownership of the store to another entity, allegedly violating 7 C.F.R. § 278.6(f). ¶ 10. Based on this violation, a TOCMP in the amount of $44,000 was assessed against Plaintiffs in January 2007, and the decision was sustained on appeal in September 2010. ¶¶ 10-12. Plaintiffs' complaint requests relief on the bases that the TOCMP violated federal law and regulations and that Defendant's actions were arbitrary and capricious and unconstitutional.

## II. LEGAL STANDARD AND DISCUSSION

Summary judgment under Fed. R. Civ. P. 56 is appropriate if the case contains no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Here, summary judgment is clearly appropriate. Both parties have moved for summary judgment, and there is no significant factual dispute—all of the claims are based on whether the agency action violated the Constitution or federal law.

The parties agree that Ninth Circuit precedent mandates employing a bifurcated standard to review a TOCMP. When reviewing whether the FNS' imposition of the fine was valid, the court should examine the issue de novo. But if the imposition is found valid, the sanction imposed is reviewed under the arbitrary and capricious standard. Hy Chan Banh v. U.S., 814 F.2d 1358, 1361 (9th Cir. 1987). "Thus, where the district court finds that violations of the

---

[1] Under 7 U.S.C. §2021, FNS had discretion to determine whether a violator should pay a civil money penalty ("CMP") or face temporary or permanent disqualification from the program.

regulations were committed, it may overturn the sanction imposed by the FNS only if the sanction is arbitrary and capricious." Id. (citing Bertrand v. U.S., 726 F.2d 518, 520 (9th Cir. 1984)). Here, the Hy Chan Banh standard is not applicable to most of Plaintiffs' claims—Plaintiffs do not deny that a violation occurred, instead directing most of their arguments at the constitutionality or interpretation of the law in question.

**A. Whether the TOCMP Should Have Been Imposed Against American Joy, Inc. Instead of Plaintiffs**

The regulation in question, 7 C.F.R. § 278.6(f)(2), allows imposition of a TOCMP on "the person or other legal entity" who transfers ownership of the property in question. Plaintiffs' opposition to Defendant's motion for summary judgment ("Pl. Opp.") asserts that based on this language, the fine should have been imposed against the entity with legal title to M&S, which was American Joy, Inc. ("AJ").[2] They argue that their application for FSP benefits was in the name of AJ, that FNS' initial communications referred to the Garmos only as corporate officers of AJ, and that the seller of the business was AJ.

The United States correctly points out that Plaintiffs' current reliance on AJ's ownership of the store contradicts the complaint, which states that Steven and Freddy Garmo "are former owners of [M&S]." ¶ 2. The United States also asserts that the regulations authorize fines against either the persons or the legal entities that violate the law.

Neither party provides authoritative case law to demonstrate whether the individuals who control an entity that owns a store can be held liable for TOCMPs. The language of § 278.6(f)(2) is not absolutely clear, but most courts addressing the issue assume that an individual who controls an entity that owns a store can be fined under 7 C.F.R. § 278.6(f)(2). For example, in Estremera v. U.S., 442 F.3d 580 (7th Cir. 2006), the court referred to plaintiff Estremera as the

---

[2] Plaintiffs were the only two shareholders of AJ, and a corporate resolution gave Steven Garmo the right to sign all papers authorizing the sale of M&S. Admin. Record at 42.

3

1 owner of a grocery store for purposes of assessment of the penalty, even though she was "the
2 owner, sole stockholder and director of a grocery store in Milwaukee called Pago Poco, Inc." Id.
3 at 582.  Further, when the store was sold to another party, "Pago Poco, Inc." was listed as the
4 seller.  Id. at 584.
5    Plaintiffs also assert, based on H. Rep. No. 99-271 at 133-34 (1985), that imposition of
6 the TOCMP here would fail to have the deterrent effect Congress intended.  The Report explains
7 the TOCMP, stating that the "proposal would make it less attractive to disqualified store owners
8 to engage in sham sales to relatives or friends as a means of avoiding disqualifications." Id. at
9 133.  Based on this language, Plaintiffs claim that assessment of the fine against them, rather
10 than AJ, would be improper.  However, nothing in the language cited from the Report indicates
11 that individual store owners should be shielded from liability if they own the store through a
12 corporate entity instead of individually.  On the contrary, allowing individuals to avoid liability
13 from TOCMPs by simply creating a corporate shell would almost certainly frustrate Congress'
14 intent.
15    Plaintiffs' remaining arguments are without merit.  Considering persuasive authority and
16 Congress' deterrence objective, the court holds that the TOCMP can be validly assessed against
17 Plaintiffs in their individual capacities.
18 **B. Constitutionality of the TOCMP**
19 1. Substantive Due Process
20    Plaintiffs claim the fine violated their substantive due process rights because "[n]o factors
21 are considered in imposing this fine, and the formula used virtually assures that every innocent
22 store owner will be subjected to the maximum penalty."  Pl. Opp. at 10.   In support, Plaintiffs
23 cite two cases to explain the requirements of substantive due process, but fail to apply the law to
24 the facts of the instant case.
25

In response, Defendant notes that the Ninth Circuit case of <u>Kim v. United States</u>, 121F.3d 1269 (9th Cir. 1997), held that permanent disqualification from FSP did not constitute a substantive due process violation. <u>Kim</u> explains that "to establish a violation of substantive due process, a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." <u>Id</u>. at 1273 (internal quotation marks omitted). While <u>Kim</u> is not binding because it did not address TOCMPs, its logic is applicable here. Congress' decision to levy a fine on permanently disqualified owners who attempted to sell their businesses in order to avoid the disqualification penalty was a valid response to a pernicious problem. While Plaintiffs can argue that the TOCMP is overbroad, they have failed to establish the regulation was not "a rational means of achieving a legitimate governmental end." <u>Id</u>. (quoting <u>U.S. v. Alexander</u>, 48 F.3d 1477, 1491 (9th Cir. 1995)).

<u>2. Taking</u>

Plaintiffs also contend that the TOCMP was an unconstitutional taking, stating that the penalty is a deprivation of store owners' property. They argue that because 7 C.F.R. § 278.6(g) "forbears the sale of property rights in perpetuity, unless the civil money penalty is paid," the court must strike it down as applied here. Pl. Opp. at 13. According to Plaintiffs, imposition of the TOCMP was unconstitutional here because (1) they did not know of the violations; (2) they were in the process of selling the store before the illegal conduct occurred; and (3) they lost money from their investment.

Plaintiffs cite several cases from other circuit courts for their argument that disqualification from the FSP is a deprivation of property. <u>Ghattas v. U.S</u>, 40 F.3d 281, 283 n.2 (8th Cir. 1994); <u>Cross v. United States</u>, 512 F.2d 1212, 1217 (4th Cir. 1975). However, Plaintiffs do not adequately explain how these cases support the view that imposition of the TOCMP constitutes a complete deprivation of property. Instead, Plaintiffs cite <u>Lucas v. South</u>

Carolina Coastal Council, 505 U.S. 1003, 1015 (1992), which explains that the only categorical areas where the court finds a taking without case-specific inquiry are (1) a physical invasion of the owner's property, and (2) a regulation that denies "all economically beneficial or productive use of land." The TOCMP fits in neither category, especially given that it is only assessed against the former owners. The only case cited by the parties that is directly on point confirms this conclusion.[3] Traficanti v. U.S., 227 F.3d 170, 176-77 (4th Cir. 2000) (noting that the fine does not prevent the owner from selling the land and that the post-sale penalty does not negate all beneficial use of the property). Plaintiffs have not demonstrated that the TOCMP was an unconstitutional taking in this case despite the fact that it does not fall into one of the Lucas categories.

3. Excessive Fine

In their final constitutional argument, Plaintiffs state that "if the TOCMP . . . can be seen as punishment, the Excessive Fines Clause may be potentially applicable." Pl. Opp. at 15. They proceed to aver that the monetary penalty must be punitive because it becomes effective upon sale of the store, an event that might not happen. Furthermore, Plaintiffs claim that because they were uninvolved in the violations and "could not reasonably have done anything else to prevent the violations from occurring," the fine is excessive. Defendant responds by citing again to Traficanti, which upheld a $40,000 TOCMP against an Excessive Fines Clause challenge. 227 F.3d at 177. Further, Defendant argues that the fine is not disproportionate because Congress decided that without heavy penalties, the law would not have the deterrent effect it desired.

---

[3] In their opposition brief's section concerning the Takings clause, Plaintiffs also cite to the former 7 U.S.C. § 2024(h)(3) to argue that Congress did not intend to impose a penalty on unknowing owners. The language of subsection (h)(3) stated that "[n]o interest in property shall be forfeited under this subsection as the result of any act or omission established by the owner of the interest to have been committed or omitted without the knowledge or consent of the owner." However, subsection (h) was entitled "Criminal forfeiture," and all of §2024 deals with criminal penalties for illegal sale, use, or transfer of benefits. Congress' provision establishing the TOCMP is in a different part of the U.S. Code (7 U.S.C. §2021(e)(1)), and thus is not encompassed by §2024(h)(3), which stated that it applied to violations "under this subsection."

Again, Plaintiffs provide little support for their argument. While Traficanti is once more the only case on point cited by the parties, the Ninth Circuit upheld CMPs of up to about $19,000 assessed for food stamp trafficking in Vasudeva v. U.S., 214 F.3d 1155 (9th Cir. 2000). As with CMPs, here Congress made a determination that harsh fines were necessary to prevent owners from transferring ownership and avoiding the reach of laws regulating the program. Further, though Plaintiffs constantly profess their unawareness of the violations that caused disqualification, they cannot argue that they were unaware of the violation that caused the TOCMP itself: the closing of the sale after disqualification occurred. Given Vasudeva and Kim v. United States, 121F.3d 1269 (9th Cir. 1997) (which upheld permanent disqualification in the face of an Excessive Fines Clause challenge), Ninth Circuit precedent indicates that Congress' decision to impose stiff fines on those who traffic in food stamps is constitutional.

**C. Whether Fine Imposed Was Arbitrary and Capricious**

Plaintiffs also contend that FNS' imposition of the TOCMP was arbitrary and capricious and contrary to legislative intent. They argue that under the system of calculation, "any store that redeemed an average of as little as $500 of food stamps per month would reach the maximum penalty." Pl. Opp. at 11. Relatedly, Plaintiffs take issue with the fact that the formula to determine the TOCMP amount does not consider the store's history of blamelessness, the seriousness of the offense, or the culpability of the owner.

First, Defendant responds that the agency action cannot be arbitrary and capricious because it directly follows the statute and regulations. 7 U.S.C. § 2021(e)(1) provides for the TOCMP and mandates that if a store is disqualified permanently, "the civil penalty shall be double the penalty for a ten-year disqualification period, as calculated under regulations issued by the Secretary." The regulations in question at 7 C.F.R. § 278.6(g) require that in instituting a TOCMP for a permanently disqualified owner, the FNS shall: (1) determine the owner's average monthly coupon redemptions for the year immediately preceding the month the owner was

charged with the violations; (2) multiply the average monthly figure by ten percent; and (3) multiply that product by 240 – (double the penalty for ten-year disqualification). In Plaintiffs' case, the total under that formula was over $130,000, but the maximum allowed for each violation was $11,000 under the law at the time, so the TOCMP was reduced to $44,000.

As stated above, Plaintiffs do not question the FNS calculation in their case, but instead argue that the regulation is arbitrary because it levies such high fines and fails to take other factors into account. In support of their argument, Plaintiffs cite Corder v. U.S., 107 F.3d 595 (8th Cir. 1997). In Corder, the Eighth Circuit held that the agency's rules for imposing CMPs were arbitrary and capricious because they ignored relevant factors in considering the amount of the fine. While Congress did not instruct the agency to consider specific factors, it "generally directed FCS to exercise discretion so that 'the punishment will more closely fit the crime.'" Id. at 597 (quoting H. Rep. No. 100-828, pt. 1 at 27-28 (1988)). For guidance, the court referred to other laws administered by the Department of Agriculture, finding that the Secretary should consider the gravity of the offense, size of the business, and other factors when assessing the fines in question. Id. at 598.

In Vasudeva v. U.S., 214 F.3d 1155, 1160 (9th Cir. 2000), the Ninth Circuit discussed Corder, noting that the result in that case "turned on the effect . . . of subjecting nearly every first-time offender to a maximum $40,000 fine without any evaluation of preventive measures or complicity." Without commenting more on Corder's reasoning, the court held that the penalties applied in that case (up to about $19,000) were not arbitrary and capricious even though the Corder factors were not considered in connection with calculating the amount of the penalty. The court noted that each fine was based on food stamp profits and did not approach the statutory maximum.[4]

---

[4] Before Vasudeva, one district court distinguished TOCMPs from the situation in Corder, noting that "[u]nlike the situation involving a penalty in lieu of disqualification, Congress did not state that the penalty should fit the crime. Instead, Congress stated that it wanted a deterrent effect." Thakor v. U.S., 55 F.Supp.2d 1103, 1112 (D. Nev. 1999).

1  Here, Plaintiffs were fined the statutory maximum. However, while <u>Corder</u> addressed the
2  fine imposed at the first penalty stage—the CMP—Plaintiffs here had already been penalized at
3  that stage, and only challenge the subsequent TOCMP. As Defendant points out, Plaintiffs could
4  have presented information concerning their innocence or establishment of a trafficking-
5  prevention policy at the preliminary stage, when FNS was deciding whether to impose a CMP or
6  permanent disqualification.

7  Plaintiffs have failed to show that the regulation creating this fine was arbitrary and
8  capricious. It is true that once permanent disqualification was chosen, FNS' consideration of the
9  TOCMP was not affected by factors such as Plaintiffs' innocence or the fact that the sale was
10 already planned. While <u>Corder</u> pointed to congressional language indicating the agency should
11 use discretion in making its decision on the CMP amount, Plaintiffs have not provided anything
12 to indicate that the same discretion should apply when imposing a TOCMP, especially when
13 certain factors had been considered previously in making the disqualification decision. Further,
14 it was certainly valid for FNS to believe that Congress' intent was that the permanent
15 disqualification decision, along with the average sales of the store in question, should be the two
16 factors used in deciding the appropriate TOCMP level. See <u>Thakor</u>, 55 F.Supp.2d at 1111
17 (rejecting plaintiffs' arbitrary and capricious challenge to TOCMP (which was based on FNS'
18 failure to take into account other reasons for sale of store) because "FNS followed the statute as
19 written").

20 **III. CONCLUSION**

21 Because the facts are not disputed, this case is appropriate for summary judgment.
22 Plaintiffs' challenges to the TOCMP all fail. First, they have not demonstrated that the statute
23 was meant to allow individuals to avoid liability by holding a store through a corporate entity.
24 Moreover, Plaintiffs' constitutional challenges are for the most part unsupported by case law.
25 While the TOCMP may be harsh toward unknowing store owners, it is not so severe as to

1  constitute an unconstitutional taking or an excessive fine, nor is it fundamentally unfair or
2  unreasonable enough so as to deprive Plaintiffs of their right to substantive due process.
3        Finally, the formula used by FNS to calculate fines is not arbitrary and capricious.  There
4  is no indication that Congress intended the agency to consider additional factors in assessing
5  TOCMPs.   For these reasons, Defendant's motion for summary judgment is GRANTED.

     **IT IS SO ORDERED.**

DATED: January 18, 2012

                                                     **Jeffrey T. Miller**
                                                     **United States District Judge**